UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JONATHAN F. HOLMES, SR., and
PAMELA HOLMES,
       Plaintiffs,

vs.                                Case No. 3:09cv100/MCR/EMT

UNITED STATES OF AMERICA, et. al.,[1]
       Defendants.
_____/

## REPORT AND  RECOMMENDATION

      Plaintiffs Jonathan F. Holmes, Sr. ("Mr. Holmes"), and Pamela Holmes ("Mrs. Holmes")
(together, "Plaintiffs") proceed pro se in this civil action and have paid the filing fee.  Due to
Plaintiffs' pro se status the matter was referred to the undersigned for all preliminary orders and the
filing of a report and recommendation.  *See* N.D. Fla. Loc. R. 72.2(E), 28 U.S.C. § 636(b)(1)(B)(C),
and Fed. R. Civ. P. 72(b).  Pending are Humana's motion to dismiss (Doc. 33), and the
Government's motion to dismiss or, in the alternative, for summary judgment (Doc. 38,
memorandum at Doc. 39), as well as Plaintiffs' respective responses thereto (Docs. 41, 42).  For the
reasons stated below, the court recommends granting the motions.

---

[1] According to the style of the first amended complaint, which is the operative pleading in this case, Plaintiffs
sue two defendants: (1) the United States of America ("the United States") and (2) Humana Military Healthcare Services
[Inc.] ("Humana") (Doc. 30 at 1–2).  In the area of the style below where the United States is named as a defendant,
Plaintiffs also list the United States Air Force; Pete Geren, Secretary of the United States Air Force; T. Michael Moseley,
Chief of Staff United States Air Force; and John A. Bradley, Commander United States Air Force Reserves.
      Plaintiffs have not filed proofs of service for either of the two named defendants or any of the other listed
entities.  Counsel for Humana filed a  notice of appearance (Doc. 11), however, and the Assistant United States Attorney
("AUSA") for the Northern District of Florida filed a notice of appearance on behalf of the United States Air Force, the
United States Air Force Reserves, the Secretary of Air Force, and the Commander of the United States Air Force
Reserves (together with the United States, "the Government") (Doc. 14).

# I.     PROCEDURAL HISTORY

Plaintiffs initiated this action by filing a complaint on March 12, 2009, which invoked the court's jurisdiction pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (Doc. 1 at 2).  After paying the filing fee, and without awaiting service or other instructions from the court, Plaintiffs obtained summonses from the clerk of court and proceeded to serve the complaint. Humana then filed a motion to dismiss (Doc. 12), to which Plaintiffs responded (Doc. 18).[2]  In the interest of conserving the court's and the parties' resources, the court entered an order staying discovery until it had issued, and the district court had ruled on, a report and recommendation on Humana's motion (Doc. 17).  The Government also moved to dismiss[3] (*see* Doc. 20, motion to dismiss or, in the alternative, for summary judgment, and Doc. 24, order treating motion as one to dismiss).  Instead of submitting a response to the Government's motion to dismiss, Plaintiffs filed a motion to amend their complaint (Doc. 25), which the court granted (Doc. 28, amended complaint at Doc. 30).  Additionally, Plaintiffs submitted a response to the notice of appearance filed by the AUSA (Doc. 23).  The pending motions to dismiss were terminated as moot (Doc. 32).

Humana moved to dismiss the amended complaint (Doc. 33), as did the Government (*see* Doc. 38, motion to dismiss or, in the alternative, for summary judgment, and Doc. 40, order treating motion as one to dismiss).[4]  Plaintiffs filed a response to Humana's motion (Doc. 41).  Although the court had instructed Plaintiffs to respond to the Government's motion to dismiss, they instead filed a response titled "Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment" (Doc. 42).[5]  The Government filed a reply to the response (Doc. 44), with leave of court and over the opposition of Plaintiffs (Docs. 45, 47).  The court subsequently entered an order

---

[2] Humana read Plaintiffs' complaint as asserting claims under Title VII of the Civil Rights Acts of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973.  Plaintiffs responded by filing a "Response to Defendant [Humana's] Motion for Dismissal from Title VII Civil Action," to which they attached approximately thirty pages of exhibits (Doc. 18).

[3] The Government read Plaintiffs' complaint as implicating the FTCA, Title VII, the ADA, and the Rehabilitation Act, as well as raising claims against the Air Force Board for Correction of Military Records ("AFBCMR").

[4] Neither Humana nor the Government has filed an answer to the amended complaint.

[5] Plaintiffs attach no exhibits to this response although the response references numerous exhibits.  Plaintiffs do not so state, but apparently they intended to rely on the exhibits attached to Document #18 and/or Document #23.

advising that the Government's motion would be treated as one for summary judgment, setting an advisement date, and stating that the parties would be permitted to engage in a brief period of discovery limited to the issues raised in the Government's motion (Doc. 56).[6] Although directed to do so, Plaintiffs did not timely submit any further response to the Government's motion nor did any party file additional evidentiary materials.[7] On August 8, 2010, however, Plaintiffs filed a motion to admit a letter dated July 6, 2010, from an officer with the Department of the Air Force, Headquarters Air Force Legal Operations Agency. Pursuant to this letter, the Air Force denied Plaintiffs' FTCA claim for three million five hundred thousand dollars ($3,500,000.00) in damages for personal injuries allegedly sustained between 2005 and 2007 (Doc. 58). Following the filing of a response in opposition by the Government (Doc. 60), the court granted Plaintiffs' motion and accepted the letter (Doc. 61).

## II. FACTUAL HISTORY

The following facts are consistent with and/or derived from Plaintiffs' amended complaint[8] (Doc. 30); the statements of facts provided in the motions filed by Humana and the Government (together, "Defendants") (Doc. 33 at 5; Doc. 39); Plaintiffs' responses to Defendants' motions (Docs. 41, 42); and/or Plaintiffs' exhibits (Docs. 23-2; 58).

In March 2002 Mr. Holmes, then in the United States Air Force Reserves, was called to active service (Doc. 30 at 7); at the time he was deemed medically "fit for duty" (*id.*). In March

---

[6] The court advised that if any party contended that discovery was needed beyond that which the court then authorized, that party should so inform the court; if the court determined that additional discovery is warranted, it would enter an appropriate order. No party has made any such request.

[7] Plaintiffs failed to respond to the court's advisory order as instructed, and their earlier response to the Government's motion references (often incorrectly) exhibits that were not attached or otherwise identified by Plaintiffs (Doc. 42). In light of Plaintiffs' pro se status, however, the court considers—to the extent warranted—the earlier-filed response, as well as the exhibits attached to the unrelated submission at Document #23 (which contains all of the same exhibits, and more, that Document #18 contains, although some of the exhibits in the two docket entries are differently ordered or otherwise differently identified) and Document #58. The court refers to the exhibits in Document #23-2 by the page numbers assigned to them in its electronic docketing system, not as Plaintiffs may have identified them. Indeed, all cited pages of the record refer to the docketing system's enumeration, not the parties'.

[8] The court has made its best effort to comprehend, piece together, and fairly present Plaintiffs' allegations and claims. Plaintiffs' amended complaint is disjointed and contains factual and logical voids, however, making the amended complaint difficult to follow. Also, while the exhibits supplied by Plaintiffs, and the Government, help to fill in some of the gaps, these exhibits clearly represent only a portion of all of the records relevant to the history of Plaintiffs' claims. The court recognizes that, due to these deficiencies, it may have inadvertently omitted or misconstrued some extraneous facts in this report; nevertheless, the court believes that the essential facts are clear and have been presented correctly.

2003 Mr. Holmes was ordered out of the Reserves and into the United States Air Force, at which time he again was processed as medically "fit for duty" (*id.* at 8). Just one month later, however, in April 2003, a kidney biopsy revealed that Mr. Holmes suffered from a serious renal condition, focal segmental glomerulosclerosis. In June 2003 Mr. Holmes' physician initiated the process to determine whether the kidney condition had occurred in the "line of duty" (Doc. 23-2 at 16).[9] By December 2003, the condition had worsened, and Mr. Holmes was hospitalized and commenced hemodialysis treatment (*id.* at 9).

In January 2004 a TRICARE representative,[10] Roy Mallett, reportedly informed civilian transplant facilities involved in processing Mr. Holmes for a kidney transplant that he was not eligible to receive a transplant at a civilian facility because he was on active duty; instead, Mr. Holmes would be referred to a military transplant hospital for the procedure[11] (Doc. 30 at 11; Doc. 23-2 at 35). In March 2004, after a lengthy assessment that involved conflicting opinions at various levels of review, the Air Force Reserve Command ("the Command") determined that Mr. Holmes' renal condition had not been sustained in the "line of duty" but rather had existed prior to his military service and was the result of a genetic/pre-existing medical condition (*see* Doc. 23-2 at 16–27; Doc. 30 at 10). In June 2004, after Mr. Holmes sent a complaint to his United States Congressman about the unfavorable "line of duty"determination, he received information indicating that the Command considered his kidney ailment to be one that was "more common in members of the African-American race" (*see* Doc. 23-2 at 27; Doc. 30 at 10). Mr. Holmes is African-American (*see* Doc. 23-2 at 12). In August 2004 Mr. Holmes filed a complaint with the Military Equal Opportunity ("MEO") Office on Eglin Air Force Base, asserting that the unfavorable "line of duty"

---

[9] Summarized briefly, the "line of duty determination" process is commenced with a medical assessment of a service member's injury, wound, or illness. Following other assessments, a decision is made regarding whether, in light of his condition, the member should be returned to duty, separated, or permanently or temporarily retired. If the member is separated or retired, benefits may be available for those disabilities that were incurred "in the line of duty." *See* Doe v. United States, 2009 WL 260967, *1 n.7 (Fed. Cl. Jan. 30, 2009); *see also* Doc. 23-2 at 85–89) (Air Force Instruction 36-2910, setting guidelines for "line of duty" determinations). Such benefits may include disability retirement and medical coverage (*see* Doc. 23-2 at 85–86).

[10] Humana is a regional contractor for TRICARE, the Department of Defense's health care program. *See* http://www.humana-military.com/AboutHMHS/about-us.asp (last visited August 9, 2010).

[11] Plaintiffs rely on an April 18, 2005, letter from one of Mr. Holmes' civilian health-care providers for this information (Doc. 30 at 11; *see also* Doc. 23-2 at 35).

determination was racially discriminatory (*see* Doc. 23-2 at 30–31; Doc. 30 at 10). Additionally, in August 2004 Mr. Holmes was released from his mobilization orders and placed on special orders pending a general court-martial proceeding (Doc. 30 at 10). In October 2004, after a reinvestigation into the unfavorable "line of duty" determination, the Command reversed itself and approved a "line of duty" determination (*see* Doc. 23-2 at 32–34), and in November 2004 Mr. Holmes began the Medical Evaluation Board review process[12] (Doc. 30 at 10). In December 2004 Mr. Holmes was convicted in court-martial proceedings, after pleading guilty to the offenses of travel voucher fraud and theft (*see id.* at 11; *see also* Doc. 23-2 at 34).[13]

In February 2005, the Medical Evaluation Board's review was stopped, due to Mr. Holmes' court-martial conviction (Doc. 30 at 11). Although Mr. Holmes had been waiting to be processed for a kidney transplant since January 2004, as of April 2005 he still had not been contacted by either a military or civilian transplant facility to commence the procedure (*see* Doc. 23-2 at 35*)*. In August 2005 Mr. Holmes and his family were withdrawn from TRICARE coverage, and Mr. Holmes began filing numerous complaints "with federal and military agencies for proof of active duty status for medical benefits" (*id.*). Between July 2005 and February 2007, during the time of the appeal of his court-martial, Mr. Holmes received no paperwork from the military informing him that he had been taken off active duty or was on appellate leave, yet he remained withdrawn from TRICARE coverage[14] (Doc. 23-2 at 52). After filing a complaint with his United States Senator, Mr. Holmes

---

[12] The Medical Evaluation Board decides whether the service member meets the military's medical retention standards. *See* Doe, 2009 WL 260967 at 1, n.7.

[13] *See also* United States v. Holmes, 2006 WL 3895071 (A.F. Ct. Crim. App. 2006) (affirming the findings and sentence imposed in the December 2004 court-martial of Jonathan F. Holmes).

[14] Appellate leave is a status on which a military member can be placed while he awaits the completion of the appellate process of his court-martial conviction. 10 U.S.C. §§ 876a, 706, 707. "A service member on appellate leave is entitled to military benefits such as health care . . . but not military pay and allowances." Johnson v. United States, 41 Fed. Cl. 190, 192 (1998).
Plaintiffs have submitted a memorandum from the Air Force Legal Services Agency ("AFLSA"), the full date of which is unclear but likely is March 1, 2006, that states Mr. Holmes' court-martial conviction was then in the process of being reviewed on appeal (Doc. 23-2 at 45). Although the memorandum notes that the AFLSA had no documentation indicating what Mr. Holmes' current duty status was and no knowledge of any action taken to place him on appellate leave, it also states that because Mr. Holmes was a Reservist he would not necessarily be placed on appellate leave (*id.*, citing Air Force Instruction 51-201, ¶ 9.1.2). Rather, as a Reservist, he could be removed from active duty status and recalled as necessary to complete appellate review (*id.*). According to another document submitted by Plaintiffs in connection with Mr. Holmes' effort to upgrade the bad conduct discharge he later received, "'[t]his is what happened in the applicant's case and the [Air Force Court of Criminal Appeals] addressed this issue and found removal from active

apparently was informed that, in order to have his health care benefits restored quickly, he should abandon his court-martial conviction appeal (Doc. 39-1 at 7). In January 2007 Mr. Holmes "g[ave] up his appellate rights" (Doc. 30 at 11). Following this action, Mr. Holmes' TRICARE coverage was retroactively reinstated.[15] In April 2007 Mr. Holmes was given a bad conduct discharge based on his court-martial conviction (Doc. 23-2 at 4). Also in April 2007 Mr. Holmes began being processed for a kidney transplant (Doc. 30 at 12).[16]

On February 12, 2008, Mr. Holmes filed an application with the Air Force Discharge Board to review the nature of his discharge[17] (Doc. 39-1 at 4), which application apparently was denied. On March 18, 2008, Mr. Holmes filed an application with the AFBCMR to change the characterization of his service from a bad conduct discharge to an honorable discharge[18] (*see* Doc.

---

duty status appropriate'" (Doc. 23-2 at 51). The July 6, 2010, denial of Plaintiffs' FTCA claims states, however, that "[a]t the time of the alleged torts [2005–2007], [Mr. Holmes] was in active duty status . . . ." (Doc. 58 at 1).

[15] Mr. Holmes' statement reflects that his health insurance coverage was restored from July 2005 to March 2007 (*see* Doc. 23-2 at 52). A letter to Mr. Holmes from Humana dated June 7, 2007, suggests that Mr. Holmes was eligible for medical coverage in July and August 2005 through the military's Transitional Assistance Management Program ("TAMP"), and from August 31, 2005, through February 26, 2007, through TRICARE (*see* Doc. 23-2 at 36–37).

[16] As of November 2009, Mr. Holmes had not undergone kidney transplant surgery (Doc. 41 at 5).

[17] In the "issues" section of the application for review of discharge, Mr. Holmes wrote that his

problems receiving line of duty (renal failure), was not weighted [sic] during court martial (2003/12/20). Member was never placed on appellate leave and was refused proper medical treatment from 8/25/2005 to 2/30/2007. Member was denied kidney transplant processing from military health benefits management in 2004. Member has missed out on four years of life saving kidney transplant care. Member's medical condition has become more severe due to undue stress and prolonged time on hemodialysis (congestive heart failure). Member's military health [care] started after giving up appellate rights in 2/2007. Member's line of duty was denied twice because of member's racial background, and was not approved until two months before court martial. None of the line of duty documents were entered during court martial.

(Doc. 39-1at 4–5).

[18] The AFBCMR is a civilian body within the military that has authority to review a service member's "discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial)" or "to correct an error or remove an injustice" in a military record. *See, generally,* 10 U.S.C. § 1553(a), and § 1552(a)(1); *see also* Clinton v. Goldsmith, 526 U.S. 529, 538–40, 119 S. Ct. 1538, 1544, 149 L. Ed 2d. 326 (1999). In his application to the AFBCMR, in the section directing him to identify the "error or injustice in the record" for which he sought correction, Mr. Holmes wrote: "bad conduct discharge[] corrected to general discharge[] (under honorable condi[]tions)." Mr. Holmes noted that the reasons he thought the record was in error or unjust were

member's Title 7 discrimination problems approving his line of duty (for renal failure), was not

30 at 5; Doc. 23-2 at 49–63; and Doc. 39-1 at 2, 3). The AFBCMR denied this application initially (Doc. 30 at 12), and on appeal (*see* Doc. 23-2 at 62). In March 2009 the AFBCMR also denied Mr. Holmes' request for reconsideration (Doc. 23-2 at 61–63). In its final decision, the AFBCMR noted Mr. Holmes' contentions regarding the difficulties he had encountered while attempting to obtain medical treatment and his allegations of racial bias but concluded that an upgrade of Mr. Holmes' service characterization on the basis of clemency was not warranted (*id.* at 63).

In their amended complaint, Plaintiffs state they assert claims pursuant to the FTCA for the "[f]ailure to provide contractual (active duty) medical [] and retirement benefits . . . due to racial medical profiling and EEO retaliation"; the "[f]ailure to adhere to Federal and United States Air Force regulations . . . due to racially motivate[d] omissions"; and for "[p]roviding documented medical evidence of a malicious nature . . . to deny a disabled service member his Constitutional civil rights" (Doc. 30 at 3). According to Plaintiffs, Defendants' negligence "was the sole and proximate cause of the malicious administrative treatment, 552 days plus of denied medical care, degenerative health, emotional stress, and the loss of four years of kidney transplant processing [time]" (*id.* at 5). Additionally, Plaintiffs assert that they have unpaid "medical bills totaling over $300,000.00" (*id.* at 11).[19] Plaintiffs assert that the Government was "willfully negligent" in failing to timely and properly process his line of duty determination; process his medical benefits status for kidney transplantation; provide medical coverage for Mr. Holmes and his family from August 2005 through April 2007; and place him on appellate leave status during that period (Doc. 30 at 12–13). According to Plaintiffs, the prolonged denial of proper health benefits has caused them severe emotional stress and "degenerative health issues" (*id.* at 13). They seek twenty-five million two hundred thousand dollars ($25,200,000.00) in damages for "past and future mental anguish; past and future physical pain due to emotional suffering; loss of earnings and earning capacity due to

---

weighted [sic] during GCMO [general court-martial order]. Member was never placed on appellate leave after GCMO and was refused proper medical treatment from 8/25/2005 to 2/30/2007. Member was denied kidney transplant by military healthcare from 2004 to Apr 2007 while in [end] stage renal failure.

(Doc. 39-1 at 3).

[19] In his statement in support of his review for discharge application, Mr. Holmes also asserts that he was not provided TAMP coverage after his April 2007 discharge, and the Veterans Administration has denied him medical coverage benefits due to his bad conduct discharge (Doc. 39-1 at 11).

degenerative health suffered in the line of duty. Past and future medical and health care expenses, due to loss of medical and retirement benefits[,] which [] include Plaintiff's loss of veteran's benefits" (*id.* at 13–14). Plaintiffs also demand unspecified equitable relief (*id.* at 14).

## III.    DISCUSSION

### A.    The Government's Motion to Dismiss or, in the Alternative, for Summary Judgment

The court initially anticipated treating the Government's instant motion as one for summary judgment[20] (Doc. 56). Because the motion may be entirely resolved on the basis of lack of subject matter jurisdiction, however, the court proceeds pursuant to Fed. R. Civ. P. 12(b)(1). *See* Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1156–57 (5th Cir. 1981)[21] (when a district court determines that it lacks subject matter jurisdiction, the proper procedural course is to dismiss the claims over which it has no jurisdiction rather than to enter summary judgment on the merits). Motions to dismiss for lack of subject matter jurisdiction may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2009). When reviewing a facial attack, the court should inquire as to whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking as true the allegations in the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast, when presented with a factual attack on subject matter jurisdiction, the court may look outside the complaint and consider matters outside the pleadings, such as affidavits and other evidence. *Id.* In a factual attack, the court may weigh the evidence and satisfy itself that it has jurisdiction. *Id.* In the instant case, the court considers matters outside the pleadings in concluding that subject matter jurisdiction does not lie to hear Plaintiff's claims.

In its motion the Government notes that although Plaintiffs state that their amended complaint was filed pursuant to the FTCA, their allegations suggest they in fact may be asserting

---

[20] The summary judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Thus a motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

[21] *See* Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in the Eleventh Circuit all decisions of the former Fifth Circuit announced prior to October 1, 1981).

at least four alternative avenues for obtaining relief: an ordinary tort claim pursuant to the FTCA or a constitutional tort claim pursuant to <u>Bivens v. Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971); an employment action pursuant to Title VII, 42 U.S.C. § 2000e-16(a); and review of Mr. Holmes' court-martial conviction or the AFBCMR's rejection of his request to upgrade his service characterization (Doc. 38 at 4–5). The court must review the submissions of pro se litigants liberally. <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and are therefore liberally construed). The court should not, however, serve as de facto counsel or "rewrite an otherwise deficient pleading in order to sustain an action." <u>GJR Invs., Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998). In this case, although it reads the amended complaint, as well as other papers filed by Plaintiffs, as expressing the intention to pursue their claims under the FTCA,[22] the court agrees that a very liberal reading of Plaintiffs' amended complaint might render it, at least in part, amenable to construing it as the Government suggests. Accordingly, in an abundance of caution, the court will address Plaintiffs' allegations as asserting not only FTCA claims but also, to a limited extent, as asserting claims pursuant to <u>Bivens</u>, Title VII, and for review of the AFBCMR's decision pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701–706.[23]

<u>Federal Tort Claims Act and Bivens</u>

The court first addresses the Government's contention that under the doctrine of <u>Feres v. United States</u>, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950), there is no subject matter

---

[22] The court notes that Defendants read Plaintiffs' initial complaint as asserting numerous bases for relief (*see* Docs. 12, 20). In their amended complaint, however, Plaintiffs specifically, and repeatedly, identify this case as brought pursuant to the FTCA (*see* Doc. 30 at 2, 3, 4, 5, and 12), and—they appear to cite no other statutory or other basis for relief, with the possible exception of a brief reference to the violations of their constitutional rights. Additionally, while the text of Plaintiffs' motion to amend their complaint is somewhat confusing, they clearly caption it as a "Motion to Amend from Title VII to Federal Tort Claim Act (FTCA)" (*see* Doc. 25). Moreover, in their response to the Government's motion Plaintiffs likewise appear to continue to treat this case as involving FTCA claims (*see* Doc. 42 at 2–3).

[23] The court therefore will not, as the Government suggests, recommend the substitution of the United States as the sole real party in interest and the dismissal from this suit of the other named entities (Doc. 38 at 7).

jurisdiction over Plaintiffs' FTCA claims.[24]

The United States, as sovereign, is immune from suit except in cases where it consents to be sued. United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349, 1352, 63 L. Ed. 2d 607 (1980). Moreover, the terms of the United States' consent define the federal court's jurisdiction; thus, when no such consent exists, the district court has no authority to entertain the suit. Id. The "FTCA is a specific, congressional exception" to the United States' sovereign immunity for tort claims . . . ." Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994). The waiver of sovereign immunity permitted under the FTCA, however, "must be scrupulously observed, and not expanded, by the courts." Id. In Feres, the Supreme Court announced a judicially created immunity doctrine that has the effect of limiting the general waiver of governmental immunity for tort established by the FTCA: service members are barred from bringing an FTCA suit against the federal government for injuries that "arise out of or are in the course of activity incident to [military] service." Id. at 146. The Eleventh Circuit has summarized the Feres doctrine by stating that claims brought by service personnel "against the military for injuries incident to service are nonjusticiable, whether the claims request monetary damages or injunctive relief."[25] Speigner v. Alexander, 248 F.3d 1292, 1298 (11th Cir. 2001). Three factors should be considered in determining whether the Feres doctrine renders a service member's claims nonjusticiable: (1) the duty status of the service member, (2) the place where the alleged injury occurred, and (3) the activity in which the service member was engaged at the time of injury. Id. at 1298; Pierce v. United States, 813 F .2d 349, 352–53 (11th Cir. 1987) (per curiam). The rationale behind this test is to distinguish cases that may interfere with military discipline and command decisions from those that do not. See Whitley v. United States, 170 F.3d 1061, 1069 (11th Cir. 1999); see also United States v. Johnson, 481 U.S. 681, 692, 107 S. Ct. 2063, 95 L. Ed. 2d 648 (1987) (emphasizing that interfering with military discipline is the concern at "the

---

[24] The court addresses the Government's arguments in the order it finds most convenient, rather than the order in which the Government may have presented them. Additionally, although the Government makes a wide variety of arguments in support of its motion (including, *inter alia,* those based on the failure to exhaust all administrative remedies, Feres, the statute of limitations, respondeat superior, qualified immunity, standing, res judicata, collateral estoppel, and the "military exception" to Title VII claims), the court addresses only those arguments made by the Government that its deems necessary and most expedient in resolving this case.

[25] The Eleventh Circuit has explained that there are "'[t]hree strands of justiciability doctrine'–standing, ripeness, and mootness–that go to the heart of the Article III case or controversy requirement.'" Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244 (11th Cir. 1998).

heart of the <u>Feres</u> doctrine"), and <u>United States v. Shearer</u>, 473 U.S. 52, 59, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985) (cautioning that plaintiff could not escape "the <u>Feres</u> net" by characterizing negligence claim as a "personnel decision" when in fact a "decision of command" was involved).

Although it is not entirely clear from the record before the court what Mr. Holmes' duty status was during the relevant period (*see*, *e.g.,* n.14, *supra*), the evidence indicates he was either on active duty status or reserve duty status; either status, under the facts of this case, is sufficient to establish the first factor of the <u>Feres</u> test. *See* <u>Norris v. Lehman</u>, 845 F.2d 283, 287 (11th Cir. 1988) (noting that dispositive inquiry does not require that service member be on active duty but rather that he had a relationship to the service such that the events at issue arose out of activity incident to service); <u>Quintana v. United States</u>, 997 F.2d 711 (10th Cir. 1993) (applying <u>Feres</u> doctrine to reserve service member's FTCA claim: "[a]ctive duty status is not necessary for the <u>Feres</u> 'incident to service' test to apply"). Moreover, the place of the injury and the activities at issue unquestionably were "incident to" Mr. Holmes' military service. The undisputed record reflects that Mr. Holmes' claims arise from command decisions and matters of military discipline that transpired during the course of his military service. Plaintiffs' allegations directly implicate the "'management' of the military" and call into question "basic choices about the discipline, supervision, and control of a [service member]." <u>Shearer</u>, 473 U.S. at 58. For these reasons, the court concludes that Mr. Holmes' alleged injuries in this case were incident to his military service and thus that the <u>Feres</u> doctrine applies.

Due to the applicability of the <u>Feres</u> doctrine, Plaintiffs cannot meet their burden of establishing the court's subject matter jurisdiction over their FTCA claims. *See* <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (stating that the burden of establishing jurisdiction rests on the party asserting it); *see also* <u>Sheely v. MRI Radiology Network, P.A.</u>, 505 F.3d 1173, 1182 (11th Cir. 2007) ("We have repeatedly said that when a district court disposes of a case on justiciability . . . grounds we will treat the district court's determination as if it was ruling on a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1) . . . ."). Dismissal of the claims, treated as brought pursuant to the FTCA, therefore is appropriate for lack of subject matter jurisdiction. *See* <u>Starke v. United States</u>, 249 Fed. App'x 774 (11th Cir. 2007) (affirming dismissal of FTCA claim for lack of subject matter jurisdiction

pursuant to <u>Feres</u> doctrine); <u>Kitowski v. United States</u>, 931 F.2d 1526 (11th Cir. 1991) (same); and <u>Flowers v. United States</u>, 764 F.2d 759 (11th Cir. 1985) (same).

In addition to concluding that Plaintiffs are unable to establish subject matter jurisdiction over their FTCA claims in light of the <u>Feres</u> doctrine, the court is persuaded that jurisdiction does not exist for another reason: Plaintiffs have failed to meet their burden of showing that they fully and properly exhausted the claims prior to filing this suit.

With respect to exhaustion of administrative remedies, the FTCA provides in relevant part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). This exhaustion requirement is jurisdictional; the failure to exhaust administrative remedies prevents judicial review of a tort claim against the United States. <u>Turner ex rel. Turner v. United States</u>, 514 F.3d 1194, 1200 (11th Cir. 2008). Air Force Instruction 51-501, which pertains in relevant part to the requirements for presenting a tort claim, provides that "[a] claimant or authorized agent must present to the Air Force a properly signed SF 95, Claim for Damage, Injury, or Death, or other signed writing for money damages in a sum certain for damage to or loss of property, personal injury, or death." Air Force Instruction 51-501, ¶ 1.3.1. Thus, although an SF95 form is not strictly required, the alternative form of notice must consist of "signed writing . . . in a sum certain." Air Force Instruction 51-501, ¶ 1.3.1. A federal court has no subject matter jurisdiction over a suit against the United States unless the plaintiff has first filed an administrative claim with the concerned agency pursuant to § 2675(a) that contains a "claim for money damages in a sum certain." <u>Dalrymple v. United States</u>, 460 F.3d 1318, 1324 (11th Cir. 2006). "When the sum certain is omitted, the administrative claim fails to meet the statutory prerequisite to maintaining a suit against the government, and leaves the district court without jurisdiction to hear the case." <u>Suarez</u>, 22 F.3d at 1065. The Supreme Court has held that a pro se claimant is bound by the FTCA's exhaustion requirement, stating, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." <u>McNeil v. United States</u>, 508 U.S. 106, 113, 113 S. Ct. 1980, 1984,

124 L. Ed. 2d 21 (1993).

Arguing in support of its contention that Plaintiffs did not properly exhaust their FTCA claims, the Government has supplied the declaration of Colonel Timothy J. Cothrel, United States Air Force, Chief, Claims & Tort Litigation Division, AFLOA,[26] and copies of Mr. Holmes' review of discharge and correction of military records applications (Doc. 39-1 at 3–7). Plaintiffs submit that they have filed claims concerning their allegations since 2004 "with [the] federal defendant administrative chain," including the "Military EEO," their Congressman and Senator, the Department of Defense, the AFBCMR, and—apparently—the AFLSA[27] (Doc. 42 at 2–3). In their response Plaintiffs seem to assert that even though they did not file an SF95 prior to initiating this case, they filed a legally sufficient claim by submitting a signed, written demand for the payment of a sum certain, as permitted by Air Force regulations (see Doc. 47 at 2). Additionally, as evidenced by their most recently filed document (Doc. 58), Plaintiffs apparently did eventually file a claim for a sum certain with the Air Force, which was denied on July 6, 2010 (Doc. 58).

The court concludes that the evidence of record shows that Plaintiffs did not comply with the FTCA's exhaustion requirements prior to commencing this case. Specifically, there are no documents in the record from the entities identified by Plaintiffs which reflect that prior to March 12, 2009, when this case was initiated, Plaintiffs had presented an administrative claim to the Air Force stating a "sum certain" of their alleged monetary damages. A reference to $300,000.00 in

---

[26] Colonel Cothrel declares that a search was made of Air Force tort claim records to determine whether a claim

alleging negligence either in failing to properly treat Jonathan Holmes' illness, failing to properly determine whether his illness was in the line of duty, improperly trying and convicting him in a court martial, or in failing to correct his records sometime in the years 2002 through 2007.

The search involved checking the Armed Forces Claims Information Management System (AFCIMS), which records all tort claims filed against the Air Force since October 1, 1994. In addition, the search included contacting the legal offices at Eglin Air Force Base, Florida, and Robins Air Force Base, Georgia, the bases of jurisdiction for the area. Representatives of those offices confirmed they had not received a tort claim from JONATHAN F. HOLMES SR. and/or PAMELA N. HOLMES,[] arising out of the aforesaid incident. As a result, we have determined that no tort claim has been submitted to the Air Force by JONATHAN F. HOLMES SR. and/or PAMELA N. HOLMES[.]

(Doc. 39-1 at 1–2).

[27] Although Plaintiffs' response to the Government's motion seems to suggest they previously filed a signed Standard Form 95 ("SF95"), Claim for Damage, Injury, or Death (Doc. 42 at 3), other documents they have filed indicate more clearly that—at least until very recently—they did not file any such form (see Doc. 25 at 4; Doc. 47 at 2).

accrued hospital expenses submitted in connection with an application for review of discharge to the Air Force Discharge Board (*see* Doc. 39-1 at 11), or similar document to another review board, does not constitute an acceptable "sum certain" claim for damages presented to the appropriate federal agency. Velasco v. United States, 585 F. Supp. 2d 1 (D.D.C. 2008), cited by the Government, in particular supports this conclusion. In Velasco, the plaintiff was a Navy veteran who sought $63,000,000.00 in damages from the United States based on his allegedly wrongful confinement, in 1977, that was approximately one month in excess of the four month sentence imposed in a special court-martial. The court held that the plaintiff had failed to exhaust his administrative remedies prior to filing his FTCA suit, noting that his asserted efforts to obtain relief "appear to have been direct and collateral challenges to the special court-martial conviction and sentence, requests for clemency, applications for review of his bad conduct discharge, and attempts to obtain benefits from the Department of Veterans Affairs. . . . None of these efforts appears to have been an administrative claim submitted to the Navy pursuant to the FTCA." *Id.* at 5; *see also* Totten v. Norton, 421 F. Supp. 2d 115, 123 (D.D.C. 2006) (indicating that notation made by plaintiff on EEO complaint that he sought "compensation for humiliation, cost and attorney fees" was insufficient to satisfy prerequisites for court to exercise jurisdiction under the FTCA). Likewise in this case, Mr. Holmes' "efforts" to obtain relief prior to the commencement of this case appear to have included challenges to his line of duty determination, general court-martial conviction, request for clemency, and request for review of his bad conduct discharge—and none appears to have been an administrative claim submitted to the Air Force pursuant to the FTCA. Furthermore, with respect to the recently submitted denial of Plaintiffs' FTCA claim, it is abundantly clear that, although required by the express language of 28 U.S.C. § 2675(a), the claim was not presented and *denied* prior to the initiation of this case. In short, because Plaintiffs have failed to show that they properly exhausted their FTCA claims, the court lacks subject matter jurisdiction to consider them. Dismissal of Plaintiffs' claims, construed as brought pursuant to the FTCA, therefore is also warranted on this ground. Dalrymple, 460 F.3d at 1324; Suarez, 22 F.3d at 1065.

Next, the court considers Plaintiffs' claims as asserting constitutional torts brought pursuant

to <u>Bivens</u>.[28]  Although the <u>Feres</u> doctrine developed in the context of claims arising under the FTCA, the Supreme Court later expanded the holding in <u>Feres</u> to include all suits for damages.  Specifically, in <u>Chappell v. Wallace</u>, 462 U.S. 296, 305, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983), the Court applied the doctrine to claims seeking damages from a superior officer for alleged constitutional violations, and in <u>United States v. Stanley</u>, 483 U.S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987), the Court held "that no <u>Bivens</u> remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'"  *Id.* at 684; *see also* <u>Speigner</u>, 248 F.3d at 1295 (noting that in <u>Stanley</u> the Supreme Court "extended the nonjusticiability doctrine to include <u>Bivens</u> actions").  For the reasons discussed above in connection with Plaintiffs' FTCA claims, the <u>Feres</u> doctrine applies to the facts of this case.   Accordingly, even if Plaintiffs' claims are broadly construed as constitutional claims brought pursuant to <u>Bivens</u>, the claims are nonjusticable under <u>Feres</u> and thus are barred from judicial review.  Dismissal of any <u>Bivens</u>-type claims for lack of subject matter jurisdiction therefore is appropriate.  *See* <u>Chappell</u>, 462 U.S. at 305; <u>Stanley</u>, 483 U.S. at 684.

In sum, the court concludes that under the <u>Feres</u> doctrine, subject matter jurisdiction does not exist over Plaintiffs' tort claims, whether treated as brought pursuant to the FTCA or, construed more broadly, as brought pursuant to <u>Bivens</u>.   Additionally, the court concludes that because Plaintiffs have not established that they fully exhausted their claims prior to initiating this case, subject matter jurisdiction is lacking over any FTCA claims.  As a federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, <u>Goodman ex rel. Goodman v. Sipos</u>, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (citing <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1299 (11th Cir. 2001)), the court recommends that Plaintiffs' claims, treated either as brought pursuant to the FTCA or <u>Bivens</u>, be dismissed.

<u>Title VII</u>

---

[28]  Under <u>Bivens</u>, a plaintiff can seek monetary damages from a federal official in his individual capacity for a violation of constitutional rights.  Neither of the served defendants in this case is a proper party to a <u>Bivens</u> action: Humana is a private corporation not amenable to a <u>Bivens</u> suit, *see*  <u>Correctional Services Corporation v. Malesko</u>, 534 U.S. 61, 66, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001), and the United States has not waived sovereign immunity in <u>Bivens</u> actions. *See* <u>Bivens</u>, 403 U.S. at 410.  Moreover, <u>Bivens</u> does not extend to allow causes of action against federal agencies, such as the Air Force.  *See* <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 114 S. Ct. 996, 1005–06, 127 L. Ed. 2d 308 (1994).  Although, as noted previously, Plaintiffs identify several federal officials in the style of the case, none has been personally served, and the AUSA has only appeared on their behalf in their official capacities.  Thus there are no Defendants now before the court to whom a <u>Bivens</u> action might conceivably apply.  Nevertheless, the court will proceed slightly further in its analysis of Plaintiffs' claims construed as sounding as a <u>Bivens</u>-type action.

Section 717 of Title VII, 42 U.S.C. § 2000e-16(a), provides, in relevant part, "[a]ll personnel actions affecting employees . . . in military departments as defined in section 102 of Title 5[29] . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." As used in 42 U.S.C. § 2000e-16(a), the terms "military departments" and "armed forces" are distinct. Under this distinction, commonly referred to as the "military exception," the term "military departments" includes only civilian employees of the Army, Navy, or Air Force, while the term "armed forces" refers to uniformed military personnel. *See* Stinson v. Hornsby, 821 F.2d 1537, 1539 (11th Cir. 1987) (Title VII is not applicable to persons who enlist or apply for enlistment in any of the Armed Forces of the United States); Gonzalez v. Dep't of Army, 718 F.2d 926, 928-29 (9th Cir. 1983) (Title VII includes only civilian employees of the Army, Navy and Air Force). *See also* Roper v. Dep't of Army, 832 F.2d 247, 248 (2d Cir. 1987); Johnson v. Alexander, 572 F.2d 1219 (8th Cir. 1978). The Title VII "military exception" has been adopted by the Eleventh Circuit. *See* Doe v. Garrett, 903 F.2d 1455 (11th Cir. 1990) (citing Stinson, 821 F.2d at 1539, 1541).

In this case, any Title VII claims related to Mr. Holmes' military service in the Air Force are barred. As set forth above, under the "military exception" Title VII does not apply to members of the armed forces and, during the relevant period, Mr. Holmes was a member of the military. The court therefore lacks subject matter jurisdiction to entertain a claim by Mr. Holmes pursuant to Title VII. To the extent Plaintiffs' claims are broadly construed as presented pursuant to Title VII, therefore, the court recommends that the claims be dismissed.[30] *See* Hedin v. Thompson, 355 F.3d

---

[29] Section 102 defines military departments as "The Department of the Army . . . Navy . . . [and] Air Force."

[30] The Government argues that Mrs. Holmes does not have standing to bring a Title VII claim involving Mr. Holmes' employment. Standing requires the plaintiff to demonstrate an injury in fact or an invasion of a legally protected interest; a direct causal relationship between the injury and the challenged action; and a likelihood of redressability. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). The Government's argument, which implicates an issue of justiciability, appears to be well-taken.

Additionally, the Government argues that dismissal of any Title VII claim is warranted because Mr. Holmes failed to exhaust his administrative remedies. This may be true, although the only evidence in the record supplied by the Government regarding the exhaustion of administrative remedies is Colonel Cothrel's affidavit in which he avers that Plaintiffs did not present any tort claims to the Air Force. The Government also asserts that res judicata and collateral estoppel apply to bar any Title VII claims by Mr. Holmes, pointing to an earlier case in this district in which Mr. Holmes asserted essentially the identical claims; the case was dismissed on the ground no actionable claim had been presented under 42 U.S.C. § 2000e because Mr. Holmes was an enlisted member of the Air Force during the relevant time frame, i.e., the "military exception" applied. *See* Holmes v. Air Force, Case No. 3:05cv446/MCR/EMT, Docs. # 13, 18.

While one or all of these theories might have merit, the Government did not develop its arguments regarding

746 (4th Cir. 2004) (affirming dismissal for lack of subject matter jurisdiction on ground plaintiff, an officer in the U.S. Public Health Service, was subject to the "military exception" to Title VII).

<u>Review of Air Force Board for Correction of Military Records Decision</u>

Decisions of military boards of correction are subject to judicial review conducted under the APA, and "can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *See* <u>Chappell</u>, 462 U.S. at 303; <u>Brown v. United States</u>, 184 Ct. Cl. 501, 396 F.2d 989, 991 (1968). Judicial review reaches the Court of Federal Claims under 28 U.S.C. § 1491 ("Tucker Act"), in which jurisdiction is vested for non-tort claims for more than $10,000.00 against the United States. *See* 28 U.S.C. § 1491. For non-tort claims in amounts of $10,000.00 or less, the district court has jurisdiction under 28 U.S.C. § 1346(a)(2) ("Little Tucker Act"). In this case, according to their prayer for relief, Plaintiffs seek in excess of $10,000.00 in monetary damages (Doc. 30 at 14). Thus, to the extent Plaintiffs' claims are construed as challenging the decision the AFBCMR for an amount greater than $10,000.00, exclusive subject matter jurisdiction lies with the Federal Court of Claims.[31] The district court therefore lacks subject matter jurisdiction to hear Plaintiffs' claim construed as an attempt to set aside the AFBCMR's refusal to upgrade Mr. Holmes' service characterization from a bad conduct discharge to an honorable discharge.[32] Any such claim therefore is due to be dismissed.

For all of the foregoing reasons, regardless of whether Plaintiffs' claims are construed as brought pursuant to the FTCA, <u>Bivens</u>, Title VII, or the APA for review of the AFBCMR's decision, the court recommends that the Government's motion be granted pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**B.**    <u>Humana's Motion to Dismiss</u>

---

them to any meaningful extent. In any event, as none of these theories is necessary to the disposition of a Title VII claim against the Government in this action, given the conclusion that for other reasons subject matter jurisdiction is lacking, the court need not consider them further.

[31] As the Government submits, Mrs. Holmes would not have standing to bring this claim.

[32] This conclusion is not altered by the fact that Plaintiffs also seek unspecified equitable relief (*see* Doc. 30 at 14). Not only is the relief too vague to constitute a specific demand, but also the Tucker Act authorizes the Court of Federal Claims to grant ancillary equitable relief. *See* <u>Mitchell v. United States</u>, 930 F.2d 893 (Fed. Cir. 1991) (holding that § 702 of the APA—which constitutes a limited waiver of sovereign immunity and authorizes judicial review of final agency action in claims "seeking relief other than money damages"—was inapplicable because plaintiff could receive adequate review of his claims for equitable relief in the Court of Federal Claims).

Humana moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6),[33] asserting that Plaintiffs have failed to allege facts that give rise to a cause of action in negligence against it.[34] Plaintiffs respond, apparently, that as a TRICARE contractor Humana can be held liable for the United States' torts under an agency theory; that Humana was responsible for certain negligent acts suffered by Plaintiffs (these include Mr. Mallett's notification in January 2004 that Mr. Holmes was not eligible for kidney transplantation at a civilian facility because he was on active duty and also the fact that Mr. Holmes was never referred for transplant processing prior to his discharge from active duty); and that Humana failed to pay Mr. Holmes' medical bills from August 2005 to February 2007 until after May 2007 (Doc. 41 at 4–5).

To the extent Plaintiffs' claims are treated as brought pursuant to the FTCA or Bivens, Humana is not a proper defendant in this action. First, the United States is the only permissible defendant in an FTCA action, see 28 U.S.C. § 2679(b)(1), and the FTCA does not cover acts committed by independent contractors. See 28 U.S.C. § 2671. Second, as previously noted, Humana is a private corporation that cannot be sued pursuant to Bivens. See Malesko, 534 U.S. at 66. Additionally, Plaintiffs' allegations do not implicate a relationship or conduct that would give rise to claims against Humana pursuant to Title VII; moreover, as a threshold matter they have not demonstrated that Mrs. Holmes has standing to pursue such a claim or that Mr. Holmes has

---

[33] In considering a Rule 12(b)(6) motion the court must accept all factual allegations in the complaint as true, construing the allegations and drawing all reasonable inferences in the light most favorable to the plaintiff. Castro v. Sec'y of Homeland Sec., 472 F. 3d 1334, 1336 (11th Cir. 2006). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Ordinarily, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Even so, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). As a result, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

[34] Humana also contends that Plaintiffs' claim pertaining to Mr. Mallett is barred by the applicable statute of limitations under Florida law because his alleged conduct occurred in January 2004, more than five years prior to the filing of this action in March 2009. In light of its conclusion that Plaintiffs have failed to allege facts establishing the court's subject matter jurisdiction over their claims against Humana, the court need not consider this argument. It notes, however, that Plaintiffs may not have become aware of Mr. Mallett's statements until April 2005 (see Doc. 23-2 at 35). If that is the case, the statute of limitations might have been tolled until April 2005, making the claim timely and the defense unavailable. See Mullinax v. McElhenney, 817 F. 2d 711, 716 (11th Cir. 1987) (a cause of action does not accrue until the plaintiff knows or has reason to know that he has been injured and is aware of who inflicted the injury). Additionally, the other events cited by Plaintiffs took place within the limitations period and thus should not be time-barred.

exhausted all administrative remedies, the former of which is a jurisdictional prerequisite to suit under Title VII. *See* <u>Crawford v. Babbitt</u>, 186 F.3d 1322, 1326 (11th Cir. 1999) (employee must pursue and exhaust administrative remedies as a jurisdictional prerequisite to filing a Title VII action). Finally, as Plaintiffs' allegations against Humana do not in any way involve the review of a decision of the AFBCMR, the court would be unable to consider them in this context. In short, there is no basis under any of the cited federal statutes or law for subject matter jurisdiction, based on a federal question, to attach to a claim against Humana. Accordingly, the court recommends that the amended complaint be dismissed as to Humana for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

As a final matter, the court notes the following. Although Plaintiffs do not attempt to invoke the court's subject matter jurisdiction based on diversity with respect to a state law negligence claim against Humana, to the extent such jurisdiction might be available the court concludes that, under Florida law, Plaintiffs have failed to state a cognizable claim. The elements of a negligence claim under Florida law are: (1) the existence of a duty to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a breach of that duty; (3) a "reasonably close causal connection" between the breach and the resulting injury; and (4) actual harm. *See* <u>Williams v. Davis</u>, 974 So. 2d 1052, 1056 (Fla. 2007). The first element "focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." <u>McCain v. Fla. Power Corp.</u>, 593 So. 2d 500, 502–03 (Fla. 1992). While "every conceivable risk" need not have been identified in prior legal precedent in order for the risk to give rise to a duty of care, one who creates a risk "is required to exercise prudent foresight whenever others may be injured as a result." *Id.* "The proper way of determining whether a duty existed is to decide whether the defendant's actions created a foreseeable zone of risk, not by whether the specific injury suffered was foreseeable by the defendant." *See* <u>Fla. Power & Light Co. v. Periera</u>, 705 So. 2d 1359, 1361 (Fla. 1998). Under Florida law, whether a duty is owed is a question of law for the court to decide, <u>McCain</u>, 593 So. 2d at 502–03; in most instances, whether the duty has been breached is a question for the trier of fact. *See* <u>Marriott Int'l, Inc. v. Perez-Melendez</u>, 855 So. 2d 624, 628–29 (Fla. 5th DCA 2003) (citing cases). Where, as here, however, the facts are undisputed or taken as true, the question of breach can be decided by a court as a matter of law. *See, e.g.*, <u>L.A. Fitness Int'l,</u>

LLC v. Mayer, 980 So. 2d 550, 557–62 (Fla. 4th DCA 2008); Franco v. Miami-Dade County, 947 So. 2d 512, 517 (Fla. 3rd DCA 2007); and St. Joseph's Hospital v. Cowart, 891 So. 2d 1039, 1041–42 (Fla. 2nd DCA 2004).

As alleged in the amended complaint, Humana's actions in merely disseminating information about Mr. Holmes' health care coverage to his civilian health care providers did not create a foreseeable zone of risk. Even assuming otherwise, the court concludes that Plaintiffs have failed to allege any breach of this duty. In January 2004—when Mr. Mallett reportedly advised that because Mr. Holmes was on active duty he must obtain a kidney transplant through a military facility rather than a civilian facility—the allegations of the amended complaint reflect that Mr. Holmes in fact was on active duty and thus covered by TRICARE, a circumstance which presumably would have resulted in requiring that a transplant be performed at a military facility; according to the amended complaint, Mr. Holmes' was on active duty when he was court-martialed in December 2004 and he was not withdrawn from TRICARE until August 2005. As to Plaintiffs' contention that Mr. Holmes never was referred for transplantation prior to his discharge from active duty, Plaintiffs make no allegation, and allege no facts that imply such an allegation, that Humana—rather than a military physician or other primary health care provider, for example—had a duty to make the referral. Finally, as to Plaintiffs' assertion that Mr. Holmes accrued hospital bills between August 2005 to February 2007 which Humana did not pay until after May 2007, even if the duty to pay earlier and the breach of that duty were adequately alleged in the amended complaint, Plaintiffs have failed to allege any actual injury resulting from that breach: Humana ultimately paid the charges. For these reasons, even if their claims were treated as invoking diversity jurisdiction, Plaintiffs have failed to allege "enough facts to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 555, and thus to survive a motion pursuant to Rule 12(b)(6).

IV.    CONCLUSION

As set forth above, the court recommends that, due to lack of subject matter jurisdiction based on a federal question, Defendants' motions (Docs. 33, 38) be granted pursuant to Rule 12(b)(1). Alternatively, with respect to Humana, to the extent subject matter jurisdiction lies in diversity for a state law claim of negligence, the court recommends that Humana's motion be granted pursuant to Rule 12(b)(6) for failure to state a claim.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the Government's motion (Doc. 38) be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(1).

2.      That Humana's motion (Doc. 33) be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(1); alternatively, that Humana's motion be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6).

3.      That Plaintiffs' amended complaint (Doc. 30) be **DISMISSED** and the clerk be directed to close the file.

At Pensacola, Florida, this 13th day of August 2010.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**